# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

ALLEN BRIDGET, SR.                    CIVIL ACTION NO. 10-cv-1226
      LA. DOC #191215
VS.                                   SECTION P

                                            JUDGE DOHERTY

WARDEN, C. PAUL PHELPS
CORRECTIONS CENTER                    MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

*Pro se* petitioner, Allen Bridget, Sr., proceeding *in forma pauperis*, filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on July 15, 2010. Petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the C. Paul Phelps Correctional Center in DeQuincy, Louisiana.  Petitioner attacks his 2005 conviction for possession of cocaine and his subsequent adjudication as an habitual offender and the ten year sentence imposed by the Sixteenth Judicial District Court for St. Mary Parish, Louisiana.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. Based on the court's review of the pleadings and exhibits annexed thereto, **IT IS RECOMMENDED** that the instant petition be summarily **DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts because petitioner's claims are procedurally defaulted and the petition and exhibits annexed thereto clearly establish that petitioner is not entitled to federal *habeas corpus* relief.

## STATEMENT OF THE CASE

On December 1, 2005, petitioner pled guilty to a charge of possession of cocaine, for which he was sentenced to serve two years imprisonment.  Thereafter, on March 3, 2006, petitioner was adjudicated a second felony habitual offender; his two year sentence was vacated and petitioner was sentenced to serve ten years imprisonment.

Petitioner's counsel filed a Motion to Reconsider petitioner's sentence; the Motion was set for hearing on July 27, 2006.  However, on that date, defense counsel advised the court that petitioner had not cooperated with her and, accordingly, she was not prepared to proceed.  Petitioner advised the court that he intended to retain counsel, but had not yet done so.  Accordingly, the court continued the hearing without date, reserving the right of petitioner's retained counsel to re-file the motion. [rec. doc. 9, pg. 45].  Petitioner apparently never retained counsel, because the motion was never re-filed.

Petitioner alleges that he directly appealed to the Louisiana First Circuit Court of Appeals arguing that his sentence was excessive.  Petitioner further alleges that his appeal was "denied" on December 2, 2008 in an unpublished opinion under Docket Number 2008-KW-1905. [rec. doc. 4, pg. 2, ¶ 9(a)-(f)].   Review of the writ denial provided by petitioner reveals that the denial was not in connection with a direct appeal, but rather pertained to a request by petitioner for transcripts.  The First Circuit denied the writ stating " We have been advised by the St. Mary Parish Clerk of Court's Office that the transcripts have been sent to relator.  If relator has not received the documents requested,

2

relator should contact the Clerk of Court's Office." [rec. doc. 9, pg. 39].  Petitioner also alleges that he sought further direct review in the Louisiana Supreme Court. [rec. doc. 4, pg. 2, ¶ 9(g)].  However, the published jurisprudence, confirmed by communication with the Louisiana Supreme Court, reveals no such writ denial.

Petitioner filed an application for post-conviction relief on April 24, 2007[1], alleging the following: (1) ineffective assistance of counsel claims due to counsel's alleged failure to object to testimony by Captain Gary Stevenson at the multiple offender hearing regarding a warrant for petitioner's arrest on charges of indecent behavior with a juvenile, during which the drugs at issue in the instant conviction were discovered, but which crime petitioner contends was not accepted by the district attorney for prosecution, and counsel's alleged failure to object to the court's consideration of a 1976 conviction to impose a higher sentence; (2) that the court improperly cited the alleged charge of indecent behavior with a juvenile and 1976 conviction for indecent behavior with a juvenile when imposing a ten year sentence; and (3)  and that the court's ten year sentence was illegal because the trial court failed to sentence petitioner in accordance with the circumstances of the crime of which petitioner was convicted. [rec. doc. 9, pg. 50-57]. The application was denied by the trial court for written reasons issued on November 5, 2007. [rec. doc. 9, pg. 58-64].

---

[1] Petitioner alleges in his application for writs to the Louisiana First Circuit Court of Appeal that the application was filed on September 20, 2007. [rec. doc. 9, pg. 46].  However, the trial court's ruling on petitioner's *pro se* motion to reconsider his sentence indicates that the application was filed on April 24, 2007. [rec. doc. 9, pg. 36].  The undersigned has given petitioner the benefit of the earlier date.

Petitioner apparently sought review of the denial of post-conviction relief in the Louisiana First Circuit Court of Appeal. [rec. doc. 9, pg. 46-49].  On March 24, 2008, the Louisiana First Circuit Court of Appeal denied review without comment. [Court Ex. "A"].  Petitioner did not seek further review in the Louisiana Supreme Court.

Petitioner next filed a *pro se* Motion to Reconsider his sentence.[2]  On January 21, 2009, the trial court denied petitioner's Motion because it was improperly directed at the original two year sentence which had been vacated on March 3, 2006 when petitioner was adjudicated and sentenced as an habitual offender.   The court therefore held that it could not reconsider that sentence.  The court additionally noted that it was "not inclined to reconsider Defendant's ten-year sentence which he is serving pursuant to his conviction as a second multiple offender." [rec. doc. 9, pg. 35-36].

Petitioner sought review of the denial of his *pro se* Motion to Reconsider his sentence in the Louisiana First Circuit Court of Appeal, conceding that due to his "very little education [he] made a mistake in his Motion to Reconsider Sentence" and that he meant to ask for reconsideration of his ten year habitual offender sentence. [rec. doc. 9, pg. 31].  In his writ application petitioner argued that his sentence was excessive under Section 20 of the Louisiana Constitution, and that his counsel was ineffective for failing to object to "the court's false allegations about the Indecent Behavior with a juvenile charge" and for failing to raise petitioner's addiction to drugs in mitigation of his sentence.  Petitioner also implied that his plea was involuntary because "on the date

---

[2]Petitioner has not provided a copy of this Motion for the court's review.

4

petitioner plead guilty his counsel said the would get five years flat" and further that "counsel made a deal with petitioner guaranteeing him that if he plead guilty to this charge he would received no more than five years . . . ." [rec. doc. 9, pg. 32].

The Louisiana First Circuit Court of Appeal denied petitioner's request for writs on May 28, 2009, finding that petitioner's Motion to Reconsider his sentence had been untimely filed, citing Louisiana Code of Criminal Procedure article 881.1(A)(1) and *State v. Gedric*, 99-1213 (La. App. 1st Cir. 6/3/99), 741 So.2d 849, 852, *writ denied*, 99-1830 (La. 11/5/99), 751 So.2d 239 in support of its ruling. [rec. doc. 9, pg. 44, *State of Louisiana v. Allen Bridget, Sr.*, 2009-KW-0381 (La. App. 1st Cir. 5/28/09) (unpublished)].

The Louisiana Supreme Court denied petitioner's request for review on May 7, 2010 without comment. [See rec. doc. 9, pg. 40-43; *State of Louisiana ex rel. Allen Bridget, Sr. vs. State of Louisiana*, 2009-KH-1536 (La. 5/7/2010), 34 So.3d 854.

Petitioner filed the instant federal *habeas corpus* petition on July 15, 2010. Petitioner asserts the following claims purportedly raised in his *pro se* Motion to Reconsider his Sentence:  (1) that his sentence is excessive under the Eighth Amendment to the United States Constitution; (2) that he received ineffective assistance of counsel at the multiple offender proceeding because counsel did not object to the "false allegations about the Indecent Behavior with a juvenile charge" and failed to raise petitioner's addiction to drugs in mitigation of his sentence; and (3) that his guilty plea was involuntary based on counsel's alleged promise of a sentence of no more than five years.

5

## LAW AND ANALYSIS

***Rule 4 Review***

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  *See also Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) *citing*  Rule 4, Advisory Committee Notes ("The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.'").

Based on the court's review of the pleadings and exhibits annexed thereto, the instant petition is subject to summary dismissal  pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.   Petitioner's claims are procedurally defaulted and the petition and exhibits annexed thereto clearly establish that petitioner is not entitled to federal *habeas corpus* relief.

## I.  Procedural Default

The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court

clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir. 1999) *citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

***Traditional Default***

 In light of the above procedural history, it is clear that petitioner's claims are traditionally procedurally defaulted, and, accordingly, cannot be reviewed by this court.

The "traditional" procedural default doctrine applies to bar federal *habeas corpus* review when a state court declines to address a prisoner's federal claims because the prisoner failed to follow a state procedural rule. *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565. When a state court denies relief on both procedural and substantive grounds, application of the procedural default doctrine is not precluded. *Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000) *citing Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

Federal courts typically refuse to reach the merits of questions of federal law if the state courts have expressly relied on an "adequate and independent" state procedural

ground in refusing to review the claim.  *See Sones v. Hargett*, 61 F.3d 410, 416-417 (5th Cir. 1995) *citing Coleman*, 501 U.S. at 731 and *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). "An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998) *citing Amos v. Scott*, 61 F .3d 333, 339 (5th Cir. 1995).  A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id. citing Lott v. Hargett* 80 F.3d 161, 165 (5th Cir. 1996).  A procedural rule is "independent" when the last state court rendering a judgment in the case "clearly and expressly" indicates that its judgment rests on the procedural ground. *Amos*, 61 F.3d at 338.

The procedural rule identified in this case satisfies both requirements. The Louisiana First Circuit Court of Appeal expressly relied on La.C.Cr.P. article 881.1(A)(1), which provides a thirty day time limitation from a felony sentencing to file a Motion to Reconsider Sentence, to deny review of petitioner's claims as having been untimely filed.  *State v. Voisin*, KH 07-1168 (La. App. 3rd Cir. 1/14/08). The Louisiana Supreme Court denied writs without comment.  *State of Louisiana ex rel. Earl J. Voisin, Jr. vs. State*, 2008-KH-0958 (La. 4/24/2009).  Accordingly, the last reasoned decision on petitioner's claims, that of the Louisiana First Circuit Court of Appeal, clearly and expressly relied on a state procedural rule as the basis for its Judgment. *See Harris* and

*Sones, supra*.  As such, the procedural rule relied on by the First Circuit as the basis for rejection of petitioner's claims, article 881.1(A)(1), satisfies the "independence" requirement.[3]

Furthermore, petitioner makes no showing that the rule is not strictly or regularly followed, or evenhandedly applied.  Thus, the state court procedural rule is presumed "adequate."  Indeed, review of published  Louisiana jurisprudence establishes that the Louisiana courts regularly invoke this procedural rule to preclude review of untimely requests for sentence reconsideration.  *State ex rel Fontenot v. State,* 836 So.2d 66 (La. 2003)*; State v. Johnson,* 2007 WL 2713536, *8 (La. App. 1ˢᵗ Cir. 2007); *State v. Murray,* 2006 WL 3813747, *3 (La. App. 1ˢᵗ Cir. 2006)*; State v. Gedric*, 99-1213 (La. App. 1ˢᵗ Cir. 6/3/99), 741 So.2d 849, 852, *writ denied*, 99-1830 (La. 11/5/99), 751 So.2d 239 (and cases cited therein).

**Cause and Prejudice/Miscarriage of Justice**

When the procedural rule has been shown to be both adequate and independent, this court may refuse to review the merits of a petitioner's claims unless the *habeas* petitioner demonstrates that he should be excused from application of the procedural default doctrine.  The petitioner may do this by showing cause and prejudice for the

---

[3]The Louisiana Supreme Court did not articulate reasons for its denial of writs. However, where there has been a reasoned state court judgment which explicitly rejects the federal claim on state procedural grounds, subsequent unexplained judgments upholding the previous judgment or rejecting the claim are presumed to rely upon the same ground. In other words, when the last reasoned decision on the claim explicitly relied upon a state procedural default, federal courts must presume that later decisions rejecting the claim "did not silently disregard that bar and consider the merits."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

default or by showing  that a complete miscarriage of justice will occur if the merits of

the claims are not considered. *Sykes*, 433 U.S. at 87-88; *Finley*, 243 F.3d 215, 220-221

(5th Cir. 2001); *Coleman*, *supra*; *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113

L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir. 1996); *Gray v. Netherland*,

518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 416; *Murray*,

477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106,

108 (5th Cir. 1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir. 1996) *quoting*

*McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

     In *Murray v. Carrier*, the Supreme Court explained that "cause" requires an

impediment external to the defense:

> "[W]e think that the existence of cause for a procedural default must
> ordinarily turn on whether the prisoner can show that some objective factor
> external to the defense impeded counsel's efforts to comply with the State's
> procedural rule. Without attempting an exhaustive catalog of such objective
> impediments to compliance with a procedural rule, we note that a showing
> that the factual or legal basis for a claim was not reasonably available to
> counsel, or that some interference by officials made compliance
> impracticable, would constitute cause under this standard."

*Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted).

     By Order dated October 26, 2010, petitioner was advised by this Court of the

potential application of the procedural default doctrine.  Accordingly, petitioner was

given an opportunity to demonstrate that federal *habeas* review of his claims is not

barred. [rec. doc. 8].  In his response, petitioner failed to present any argument as to why

his claims are not barred by the procedural default doctrine. [rec. doc. 9].

Accordingly, petitioner has not demonstrated cause for his default. Because petitioner has not demonstrated cause for his default, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Petitioner also fails to demonstrate that the procedural default doctrine should not bar his claims because he is actually innocent of the crime of which he was convicted.  In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998); *Ward*, 53 F.3d at 108. Thus, the petitioner must make a "colorable showing of factual innocence." *Callins*, 89 F.3d at 213 *quoting McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.  Here, petitioner has not shown that, as a factual matter, he is actually innocent of the crime for which he was convicted, and, thus, he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims.  Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

For these reasons, the undersigned concludes that petitioner's claims for relief are "traditionally" procedurally defaulted, and must therefore be denied.

***Technical Default***

It is additionally clear that petitioner never raised an Eighth Amendment excessive sentence as cruel and unusual punishment claim in the Louisiana state courts.  Therefore, that claim is unexhausted, and, hence, technically procedurally defaulted.

Review of petitioner's filings in the Louisiana state courts and specifically, the Louisiana Supreme Court, reveals that petitioner did not raise his excessive sentence claim under the Eighth Amendment to the United States Constitution.  Rather, petitioner expressly raised his claim *solely* under Article I, § 20 of the Louisiana Constitution of 1974. [rec. doc. 9, pg. 40-42].   Thus, petitioner's current Eighth Amendment claim is unexhausted, and, in the absence of a proper showing, is technically procedurally defaulted.

Federal *habeas corpus* relief is available only for "violation[s] of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Therefore, to be entitled to relief, "a 28 U.S.C. § 2254 applicant must claim violation of a federal constitutional right."  *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998); *see also Deters v.  Collins*, 985 F.2d 789, 791 fn.  1 (5th Cir. 1993) *citing* 28 U.S.C. § 2254(a); *Estelle v.  McGuire*, 502 U.S. 62, 68, 112 S.Ct.  475, 480 (1991).  It is not the province of a federal *habeas* court to determine if the state courts properly applied state law.  *Estelle*, 502 U.S. at 68, 112 S.Ct. at 480;  *Narvaiz*, 134 F.3d at 695.   Rather, "[f]ederal *habeas corpus* review is limited to errors of constitutional dimension . . . ."  *Castillo v.  Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).

12

As noted above, the scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion; technical procedural default exists where the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred. *See Bledsue, Coleman*, and *O'Sullivan*, *supra*.

Before seeking a federal writ of *habeas corpus*, a state prisoner must exhaust available state remedies, thereby giving the State the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004) *citing* 28 U.S.C. § 2254(b)(1), and *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) *(per curiam) quoting Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court, including a state supreme court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id. citing Duncan,* 513 U.S. at 365-366 and *Boerckel,* 526 U.S. at 845. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Howell v. Mississippi,* 543 U.S. 440, 125 S.Ct. 856, 859 (2005) *citing Baldwin,* 541 U.S. at 32.

13

This is necessary to establish that a federal question was properly presented to a state court.  *Id.*  Finally, although federal and state standards may be "somewhat similar", "mere similarity of claims is insufficient to exhaust."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Duncan*, 513 U.S. at 366 *citing Picard*, 404 U.S. at 276 and *Anderson*, 459 U.S. at 6.  The burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised. *Bell v. Cone*, 543 U.S. 447, 125 S.Ct. 847, 851 at fn. 3 (2005) *citing Baldwin*, 541 U.S. at 30- 32.

A petitioner has "technically exhausted" his federal claim if he fails to properly and timely present his claim to the Louisiana courts and is time-barred from seeking relief in the Louisiana courts because he has allowed his state court remedies to lapse. *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir. 1998) *citing Coleman v.  Thompson*, 501 U.S. 722, 731-33, 111 S.Ct.  2546 (1986) and *Sones v.  Hargett*, 61 F.3d 410, 416 (5th Cir. 1995); *Coleman*, 111 S.Ct.  732, 735 fn. 1; *Bledsue*, 188 F.3d at 254-55*; Fuller v. Johnson*, 158 F.3d 903, 905-06  (5th Cir. 1998).  In such a case, however, there is no difference between non-exhaustion and procedural default.  *Magouirk*, 144 F.3d at 358.  Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted. *Id*.

Review of petitioner's filing in the Louisiana Supreme Court reveals that petitioner did not raise his excessive sentence claim under federal law, or, more specifically, under the Eighth Amendment to the United States Constitution.  There is no mention or argument of any federal constitutional issue or any federal law supporting such a claim in his filing which could have alerted that court that his claim could arise under federal law.  Petitioner did not cite the Eighth Amendment to the United States Constitution, or, any cases directly construing the Constitution or the Eighth Amendment in support of this claim.  Rather, this issue was raised in the state courts *solely* on state law grounds.  Thus, because petitioner failed to raise any federal constitutional claim in connection with his excessive sentencing claim, it is clear that any such federal claim is unexhausted.

Under Louisiana Code of Civil Procedure article 930.8, the time to present such a federal claim has expired; petitioner is now time-barred from seeking review of a federal claim in the Louisiana courts. Thus, any potential federal claim which petitioner may have had is "technically" procedurally defaulted.

The undersigned acknowledges that Louisiana courts use the federal standard when evaluating excessive punishment claims.  However, the United States Supreme Court has issued several decisions which cast doubt on the validity of any *de facto* exhaustion rationale.  *See Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004); *Howell v. Mississippi,* 543 U.S. 440, 125 S.Ct. 856, 859 (2005); *Bell v. Cone*, 543 U.S. 447, 125 S.Ct. 847, 851 at fn. 3 (2005).  Accordingly, in the absence of Supreme Court or

15

Fifth Circuit authority to the contrary, although federal and state standards may be "somewhat similar", the undersigned must adhere to the rule that "mere similarity of claims is insufficient to exhaust." *Duncan,* 513 U.S. at 366 *citing Picard v. Connor,* 404 U.S. 270, 276 (1971) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

Petitioner fails to argue cause or prejudice to excuse his default or that failure of this court to review his claim would result in a fundamental miscarriage of justice. *See Finley v. Johnson*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman  v.  Thompson,* 501 U.S. 722, 111 S.Ct.  2546 (1986)*; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454 (1991); *Moore v. Roberts,* 83 F.3d 699 (5th Cir. 1996); *Gray v. Netherland,* 518 U.S. 152, 116 S.Ct. 2074 (1996); *Sones v. Hargett,* 61 F.3d 410,416 (5th Cir. 1995). Accordingly, petitioner's Eighth Amendment claim is technically procedurally barred.

Nevertheless, in an abundance of caution, the court will address the merits of petitioner's claims on the merits below.

## II. Merits Review

## Claim 1 Excessive Sentence

Generally, the Eighth Amendment protects against not only barbaric punishments, but also those that are grossly disproportionate to the crime committed. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Ewing v. California*, 538 U.S. 11, 20-24 (2003); *Lockyer*, 538 U.S. at 72.  However, "[for] crimes concededly classified and classifiable as felonies, . . . the length of the sentence actually imposed is purely a matter

of legislative prerogative." *Harmelin v. Michigan,* 501 U.S. 957, 962, 111 S.Ct. 2680, 115

L.Ed.2d 836 (1991) *quoting Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 63

L.Ed.2d 382 (1980).  A federal *habeas* court will not upset a state sentence within

statutory limits unless it is so disproportionate to the offense as to be completely arbitrary

and shocking. *Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir. 1975). In this way, a

"[court] must grant substantial deference to the broad authority that legislatures

necessarily possess in determining the types and limits of punishments for crimes."

*United States v. Gonzales,* 121 F.3d 928, 942 (5th Cir. 1997); *see also Ewing*, 538 U.S. at

24-25.

    In light of *Solem's* general constitutional principle and other relevant

jurisprudence, the Fifth Circuit set forth its methodology for analyzing excessive sentence

claims in *McGruder v. Puckett,* 954 F.2d 313, 315 (5th Cir. 1992).  First, the court weighs

the gravity of the offense against the severity of the sentence.  *McGruder*, 954 F.2d at

316. Then, if the court determines that the sentence is grossly disproportionate to the

offense, the court compares (2) sentences for similar crimes in the same jurisdiction and

(3) sentences for the same crime in other jurisdictions.  Only if the court concludes in the

first inquiry that the sentence is "grossly disproportionate" to the offense does the court

proceed to determine the second and third inquiries.  *United States v. Gonzales*, 121 F.3d

928, 942-943 (5th Cir. 1997).  If the court concludes that the sentence is not "grossly

disproportionate," the inquiry is finished, and the court "defer[s] to the will of" the

legislature.  *Gonzales*, 121 F.3d at 942-43.

17

Here, the issue of whether the sentence is unconstitutionally excessive turns on whether petitioner's punishment reaches at this threshold level of gross disproportionality. The Supreme Court noted the inherent subjectivity in making this threshold determination in *Rummel,* 445 U.S. at 304.  Moreover, the Supreme Court has noted that outside the capitol punishment context, successful proportionality challenges are "exceedingly rare" and constitutional violations are therefore reserved only for an "extreme" "extraordinary case."  *Ewing*, 538 U.S. at 21; *Lockye*r, 538 U.S. at 73 and 77.

In *Rummel,* the Supreme Court upheld a life sentence under a recidivist statute for a petitioner who had fraudulently used a credit card, passed a forged check, and, finally, obtained $120.75 under false pretenses. Subsequent jurisprudence in this circuit has used *Rummel* as a benchmark for distinguishing constitutional sentences and grossly disproportionate punishments. *Gonzales,* 121 F.3d at 943.

In determining whether a sentence is grossly disproportionate to the underlying offense in recidivist cases, a court must consider that "the sentence is [being] imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder,* 954 F.2d at 316; *Ewing*, 538 U.S. at 28-29 (noting that courts must weigh not only the offense of conviction, but also the defendant's prior history of recidivism). In the instant matter, petitioner was subject to a ten year sentence as a second felony offender under LSA-R.S. 15:529.1. The record reveals that petitioner's criminal record includes convictions for possession of cocaine on two occasions, a 1976 conviction for simple burglary and other misdemeanor offenses.

These crimes clearly are more severe than those in *Rummel.*  Moreover, petitioner was apparently charged with, but not convicted of, indecent behavior with a juvenile. Thus, applying the benchmark test set forth in *Rummel,* keeping in mind the substantial deference owed to the broad authority of the Louisiana Legislature in determining the types and limits of punishments for crimes, the undersigned finds that the facts of this case do not meet the threshold level of gross disproportionality; therefore, petitioner's ten year sentence, which is within the statutory limits, is consistent with the constitutional requirements of the Eighth Amendment.  Thus, petitioner's claim is without merit.[4]

**Claim 2 Ineffective Assistance of Counsel**

Petitioner also claims that his counsel was ineffective at the multiple offender proceeding because counsel did not object to the "false allegations about the Indecent Behavior with a juvenile charge" and failed to raise petitioner's addiction to drugs in mitigation of his sentence.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

---

[4]The undersigned also notes that it is clear that the habitual offender statutes are no longer subject to constitutional challenge.  *Ewing v. California,* 538 U.S. 11, 25, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), *Parke v. Raley,* 506 U.S. 20, 27, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).  States have a "valid interest in deterring and segregating habitual criminals" *Id.*

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689-90. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 *quoting Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1956) (internal quotation marks omitted). If a tactical decision is "'conscious and informed . . . [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008*) quoting Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999).

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[5] A reasonable probability is a probability sufficient to

---

[5]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.  However, self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element."  *Id.*

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

Petitioner cannot establish deficient performance with respect to his claim that counsel failed to object to testimony regarding the indecent behavior with a juvenile charge.  The transcript of the habitual offender proceeding reveals that counsel had no basis to object to Captain Gary Stevenson's testimony.  Stevenson testified about the circumstances surrounding petitioner's arrest for possession of cocaine for which he was convicted, stating that there was a warrant issued for petitioner's arrest on indecent behavior charges, and, in connection with his arrest on that charge, he was found in possession of cocaine. [rec. doc. 9, pg. 20].

Moreover, the record reveals that petitioner was charged with indecent behavior with a juvenile in the same Bill of Information in which petitioner was charged with possession of cocaine. [rec. doc. 9, pg. 59].  Furthermore, defense counsel cross-examined Stevenson regarding this testimony. [rec. doc. 9, pgs. 21-22].

Finally, in closing, petitioner's counsel argued to the court that under the habitual offender statute, the Court did not have discretion to consider the unadjudicated offense because "the statute speaks for itself" and is "very definite" on what can be considered and "there's nothing in the statute which lists that in addition to considering the fact the he [petitioner] is a second offender, you may also consider some other charges for which he [petitioner] has not been convicted, for whatever reason." [rec. doc. 9, pg. 26]. Accordingly, counsel did object to the Court's consideration of this evidence in determining petitioner's sentence under the habitual offender statute.  Under these circumstances, counsel's performance was objectively reasonable and as such, cannot be deemed Constitutionally deficient.  Indeed, the state trial court came to the same conclusion in rejecting this claim in post-conviction proceedings. [rec. doc. 9, pg. 59-60].

 Petitioner likewise fails to demonstrate that his counsel's performance was deficient in connection with his claim that counsel failed to raise petitioner's addiction to drugs in mitigation of his sentence.  Given that petitioner had twice been convicted of felony possession of cocaine charges, it is obvious that the Court was well aware of petitioner's drug addiction problems.  Under these circumstances, the undersigned cannot

22

find that petitioner has the presumption that counsel's alleged failure might be considered sound trial strategy.

Furthermore, given that the Court was obviously aware of petitioner's drug problem, petitioner can prove no prejudice as a result of counsel's alleged deficiency. There is no reasonable probability that any additional testimony on the subject testimony would have resulted in the imposition of a lesser sentence.

For these reasons, petitioner's ineffective assistance of counsel claim does not warrant federal *habeas corpus* relief.

**Claim 3 Voluntariness of Plea**

Petitioner alleges that his guilty plea was involuntary based on counsel's alleged promise of a sentence of no more than five years. In light of petitioner's plea transcript, his claim is clearly without merit.

To be constitutionally valid, a guilty plea must be knowing and voluntary. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) *citing Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989).   Thus, a guilty plea may be invalid if induced by unkept promises. *Id*. On the other hand, a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath. *Id.* citing *United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985).  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Id. quoting Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621,

23

1628-29, 52 L.Ed.2d 136 (1977).  Nevertheless, a defendant may seek *habeas* relief on the basis of alleged promises, though inconsistent with representations he made in open court when entering his guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise.  *Cervantes,* 132 F.3d at 1110 *citing Harmason,* 888 F.2d at 1529.

If the defendant produces independent indicia of the likely merit of his allegations, typically in the form of one or more affidavits from reliable third parties, he is entitled to an evidentiary hearing on the issue.  *Cervantes,* 132 F.3d at 1110.   If, however, the defendant's showing is inconsistent with the bulk of his conduct or otherwise fails to meet her burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary.  *Id. citing  United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988) (*per curiam*) and *United States v. Raetzsch,* 781 F.2d 1149, 1152 (5th Cir. 1986).   A "mere understanding" on the part of the defendant that he would receive a lesser sentence in exchange for a guilty plea will not abrogate that plea should a heavier sentence actually be imposed.  *DeVille v. Whitley,* 21 F.3d 654, 658 (5th Cir. 1994) *citing Harmason,* 888 F.2d at 1529.

Petitioner has submitted no affidavits from reliable third parties, the precise identity of any eyewitness to any alleged promise, or any indicia of the likely merit of his allegations.  Moreover, he has failed to demonstrate the exact terms of any alleged

24

promise, or exactly when, where or by whom any alleged promise was made.

Additionally, Petitioner's allegations are inconsistent with the bulk of his conduct and in the light of other evidence in the record.

Petitioner's present allegation is directly contradicted by his sworn statements during his plea hearing.  After explaining the rights that petitioner would waive by entering a guilty plea and the charge to which petitioner had agreed to plead guilty to, the Court specifically questioned petitioner as to the voluntariness of petitioner's plea as follows:

> THE COURT: You've agreed today to plead guilty to this charge, and I have agreed that I will sentence you and not have given you any promise about what your sentence is going to be.  Is that your understanding of what you have agreed to do?
> THE DEFENDANT: Yes, sir.
> . . .
>
> THE COURT: Anybody promise you anything else besides what I've just told you to get you to plead?
> THE DEFENDANT: No, sir.
> [rec. doc. 9, pg. 7].

The Court then addressed defense counsel to verify that there had been no promises made to petitioner as follows:

> THE COURT: Are you aware of any promises or threats made to induce him to plead guilty other than . . . what I have told him?
> MS. DORSEY: No, sir.
> [rec. doc. 9, pg. 7].

Thereafter, to ensure that petitioner understood that the State was going to file an

habitual offender bill against petitioner, the following transpired:

> MR. BORNE: Judge there was no plea agreement.  And the
> state reserves its right to multiple-bill the defendant.  I mean,
> you can sentence him down.  There will be a habitual offender
> proceeding.
> THE COURT: Well, I understand . . . .
> . . .
> MR. BORNE: He is ineligible for probation.  However, we
> will file an habitual offender bill, arraign him on that, and
> that's another proceeding.  There's no plea agreement
> whatsoever in this.  And to clarify for the record, the state
> reserves its right to multiple-bill the defendant.  I think that
> was made clear in your previous discussions with him.
> THE COURT: Yes.  All right. Well I had told him - -
> . . . .
> THE COURT: Well I had explained it to him.  I told him he's
> pleading guilty, and I'm going to decide what the sentence is
> going to be . . .
> [rec. doc. 9, pg. 9-10].

The judge specifically advised petitioner that there was no sentence agreement and

that his sentence would be determined by the court. Petitioner indicated that he

understood these terms.  The judge also inquired whether petitioner was relying on any

promises in making his plea; petitioner represented to the court that no such promises

were made. Petitioner's testimony in this regard was verified by petitioner's counsel who

also advised the court that no promises had been made to petitioner to induce him to plead

guilty.  Finally, the prosecutor made it abundantly clear that there was no plea agreement

and that petitioner would be subjected to an habitual offender proceeding.  This testimony

and the lack of any written plea agreement specifically promising petitioner any specific

sentence, clearly refute petitioner's allegations that there was an agreement that he receive a five year sentence.  The record  is  clear and unambiguous.  Petitioner's colloquy with the court expressly contradicts the existence of any promises or agreements regarding petitioner's sentence not contained in the record. At best, then, petitioner had a unilateral, subjective, misunderstanding as to the sentence  he would receive. However, such a misunderstanding does not render petitioner's guilty plea involuntary.  *DeVille, supra.* Thus, Petitioner is not entitled to *habeas* relief on this claim.

## CONCLUSION

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts because petitioner's claims are procedurally defaulted and the petition and exhibits annexed thereto clearly establish that petitioner is not entitled to federal *habeas corpus* relief.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed at Lafayette, Louisiana this 12th day of April, 2011.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE